| | | |
|---|---|---|
| **SEAWARD MARINE SERVICES, INC.** | § | **PLAINTIFF** |
| | § | |
| **VS.** | § | **CAUSE NO. 1:08cv587-LG-RHW** |
| | § | |
| **GRILLOT CONSTRUCTION, LLC, and** | § | **CROSS-CLAIMANT/CROSS-** |
| | § | **DEFENDANT** |
| **BEAU RIVAGE RESORTS, INC.** | § | **DEFENDANT/CROSS-DEFENDANT/** |
| | § | **CROSS-CLAIMANT** |

**MEMORANDUM OPINION AND ORDER DENYING BEAU RIVAGE'S SECOND
MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING
IN PART GRILLOT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are Defendant Beau Rivage Resorts, Inc.'s Motion for Summary

Judgment or, in the Alternative, Motion for Partial Summary Judgment on Beau Rivage's

Counterclaims Against Grillot Construction, LLC, [149] and Cross-Claimant Grillot's Motion

for Partial Summary Judgment Against Beau Rivage [155]. Beau Rivage brought breach of

contract and misrepresentation claims against Grillot for a dispute arising out of a construction

project. Beau Rivage argues (1) Grillot breached the general contract, (2) owes attorney's fees,

(3) misrepresented the work performed, (4) is liable for punitive damages, and (5) Plaintiff

Seaward Marine Services, Inc., committed fraud. Grillot seeks partial dismissal of Beau

Rivage's claims for lack of (1) damages, (2) expert testimony, and (3) fraud. The Court has

considered the parties' submissions and the relevant legal authority. Grillot is granted summary

judgment on Beau Rivage's claims for breach of contract for failing to mirror the general

contract's definition of debris, day rates, choice of law, and for including per diems, and

misrepresentation claims for dredging work in Pay Applications 6 and 14, and overestimating the

material on the barge tops.  The breach of contract claim for failure to pay sales tax is dismissed without prejudice.  The remainder of the motions is denied.

## FACTS AND PROCEDURAL HISTORY

The Court incorporates by reference the Facts and Procedural History set forth in its prior Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment, entered November 4, 2009.

Beau Rivage is a Mississippi corporation that owns a hotel, spa, and casino resort on the beach in Biloxi, Mississippi.  The casino rests on top of five connected barges, located in the Mississippi Sound.  Hurricane Katrina damaged these casino barges.

On June 12, 2007, Beau Rivage entered into a written contract with Grillot as the general contractor for the underwater repairs to the barges.  Grillot's two members are Louisiana residents.  Specifically, the contract called for oyster removal, wet welding, painting, dredging, and debris removal.  Above water repairs were handled by Yates Construction.  Grillot, in turn, hired Seaward, a marine construction company incorporated and located in Virginia, to perform a portion of the work.

During the project, Seaward encountered large amounts of debris such as abandoned construction materials.  Apparently, these were being dumped underwater by Yates.  Seaward removed these items.  Seaward then left the job in March of 2008, claiming that it was not being paid for the debris removal work, including the removal of the construction materials.  After Seaward left, Grillot subcontracted this same work to Resolve Towing and Salvage, Inc.[1]  Beau

---

[1]Resolve is alternatively identified in the record as "Resolve Marine Group."  The parties do not dispute whether Resolve Towing and Resolve Marine are the same entity.

Rivage suspended the entire project in October, citing economic reasons.

On September 5, 2008, Seaward commenced this action against Grillot and Beau Rivage over the debris removal dispute. Grillot has been dismissed as a defendant. Seaward's misrepresentation claims against Beau Rivage survived summary judgment.

Grillot and Beau Rivage brought cross-claims against each other for disputes arising from the debris removal and other portions of the general contract. Grillot has sued Beau Rivage for breach of contract and *quantum meruit*. Beau Rivage asserts breach of contract and misrepresentation. The instant motions for summary judgment concern Beau Rivage's claims against Grillot.

## DISCUSSION

### Motions for Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . .

an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Beau Rivage seeks summary judgment on all of its claims against Grillot. Because Beau Rivage bears the burden of proof on its claims, Beau Rivage "must establish 'beyond all peradventure all of the essential elements of the claim[s]'" in order to obtain summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Grillot, in turn, seeks partial dismissal of Beau Rivage's claims.

## I.     BREACH OF CONTRACT

Beau Rivage argues that Grillot breached the general contract in multiple respects: (1) failing to mirror the general contract's language concerning debris in the subcontracts with Seaward and Resolve, (2) failing to mirror the general contract's day rate in the Seaward subcontract, (3) providing day rates in the Seaward and Resolve subcontracts, (4) providing per diems in the Seaward and Resolve subcontracts, (5) failing to pay a sales tax for dredging, (6) providing no choice of law in the Seaward subcontract, (7) providing a Louisiana choice of law in the Resolve subcontract, (8) not paying the subcontractors as represented in the waiver and releases, (9) failing to remove the oyster and dredge spoils it claimed to remove once it left the project, and (10) failing to get written modifications before modifying the work. Beau Rivage argues that because of these breaches it is entitled to attorneys fees.

To prove breach of contract, Beau Rivage must prove by a preponderance of the evidence (1) the existence of a valid and enforceable contract between itself and Grillot, (2) that it breached the contract, and (3) the breach caused Beau Rivage to suffer monetary damages. *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992).

A.    DEFINITION OF DEBRIS

Beau Rivage first argues the Seaward and Resolve subcontracts fail to mirror the general contract's definition of debris.  Grillot responds that the general contract does not define debris, require that the subcontracts mirror the general contract, and Beau Rivage has not been damaged as a result.  Grillot asks for summary judgment on this claim for lack of damages.

Beau Rivage contends that this alleged breach damages Beau Rivage, because it may potentially be liable to these subcontractors for more debris removal than is provided for in the general contract, and Beau Rivage had to incur legal fees to defend itself against Seaward. Assuming that there was such a breach, this did not cause Beau Rivage any damages with respect to Seaward.  This Court has already ruled that any liability that Beau Rivage may have toward Seaward for the debris removal stems from the alleged misrepresentations Beau Rivage made to Seaward.  Thus, if Beau Rivage is ultimately adjudged liable to Seaward it will be proximately caused by Beau Rivage's alleged misrepresentations and not the Seaward subcontract's provision for debris removal.

As for Resolve, Beau Rivage points to "a probable claim by Resolve."  (Beau Rivage's Resp. to Grillot's 2d Mot. Partial Summ. J. at 6).  There is no evidence that Beau Rivage may be liable or even may be sued by Resolve because of that subcontract's debris removal provision. The only evidence is a February 5, 2010, letter from Resolve's attorney to Beau Rivage which states that there is a balance due of $739,000 to Resolve "with respect to this project," and Grillot has been paid $466,906.00 by Beau Rivage.  (Beau Rivage's Resp. to Grillot's 2d Mot. Partial Summ. J. Ex. 7).  Resolve claims that "it has now been 18 months since completion of the project and we still have not been fully compensated by Grillot."  *Id.*  Therefore, "Resolve

5

reserves its right to file a claim for the services provided to Beau Rivage with respect to this project. . . ." *Id.* Resolve's subcontract involved more than just debris removal, and Beau Rivage provides no evidence or argument that Resolve's dispute has anything to do with debris removal.

Because there is no evidence of damages, the Court need not consider whether there was a breach. Grillot is entitled to summary judgment on this breach of contract claim.

B. DAY RATES

Beau Rivage argues the Seaward and Resolve subcontracts failed to mirror the general contract's day rate for debris removal and dredging, and this caused Beau Rivage damage, because the day rates were either lower in the general contract, or the general contract provided a fixed price. Grillot responds that the general contract does not require that the subcontracts mirror the general contract and Beau Rivage suffered no damages. Grillot seeks summary judgment on this claim for lack of damages.

As previously discussed, any liability that Beau Rivage has to Seaward is based on Beau Rivage's alleged misrepresentations. Any difference in the day rate in the subcontract versus the general contract is not the cause of Beau Rivage's liability, if any, to Seaward.

As for Resolve, Beau Rivage claims that the Resolve subcontract's dredging day rate caused Resolve to charge Grillot $900,000 for dredging one barge when Grillot was only going to get a fixed price of $1,695,000 from Beau Rivage for dredging all five barges. Beau Rivage claims that had it not suspended the project in October, Grillot would have lost money on this portion of its subcontract.

> Truth be told, Beau Rivage did Grillot a favor when it shut down work on the
> Project, as Grillot would owe Resolve even more money than Grillot already does
> (some $700,000-$800,000 which Resolve says remains unpaid). Therefore, due to
> Grillot's entering into a separate day rate with Resolve, contrary to the Beau
> Rivage/Grillot contract, Beau Rivage will have to pay another dredging contractor
> more money to dredge the remaining for barges which will undoubtedly cost more
> than what the firm fixed price was [$1,695,000].

(Beau Rivage's 2d Mem. Summ. J. at 6-7). First, that Grillot would have damaged itself, is no

damage to Beau Rivage. Secondly, Beau Rivage admits that the dredging stopped when Beau

Rivage suspended the project, because the 2008 economy took a downturn. Therefore, if any

dredging was incomplete, it was not caused by the day rate but by Beau Rivage. Finally, there is

no evidence that any additional dredging will cost more than $1,695,000.

Because there is no evidence of damages, the Court need not consider whether there was

a breach of contract. Grillot is entitled to summary judgment on this breach of contract claim.

### C.      PER DIEMS

Beau Rivage claims that even though there were no per diems in the general contract,

Seaward and Resolve's subcontracts provided per diems. Grillot responds that the general

contract did not require that the subcontracts mirror its terms and Beau Rivage suffered no

damages. Grillot seeks summary judgment on this claim for lack of damages.

As previously discussed, any liability that Beau Rivage has to Seaward is based on Beau

Rivage's alleged misrepresentations. The per diem provision did not cause Beau Rivage to suffer

any damages.

As for Resolve, Beau Rivage argues that the per diem rate, "led to a virtual impossibility

that . . . Phase IV dredging could ever be done within the intended firm-fixed costs of the Beau

Rivage/Grillot project." (Beau Rivage's Resp. to Grillot's 2d Mot. Partial Summ. J. at 7). In

other words, Beau Rivage complains that Grillot was damaging itself with the risk that Grillot would have to pay more for dredging than Grillot would recover from Beau Rivage. Whether or not Grillot caused damage to itself is irrelevant and is not an independent damage to Beau Rivage.

Because there is no evidence of damages, the Court need not consider whether there was a breach. Grillot is entitled to summary judgment on this claim.

D.    SALES TAX

Beau Rivage claims that Grillot breached the general contract by failing to pay sales tax on the dredging work and therefore Beau Rivage is subject "to possible tax debt." (Beau Rivage's 2d Mem. Summ. J. at 9). Beau Rivage argues that Mississippi law would assess this tax to contractors such as Grillot. Grillot argues that the Mississippi State Tax Commission determined that this tax was not owed and that damages are speculative. Grillot seeks summary judgment on this claim for lack of ripeness.

Beau Rivage's 30(b)(6) representative Abel testified there was no tax invoice from the State. He testified that based on his legal research:

A.    . . . There's taxes due on it that could fall back to us.

Q.    Has anyone from the State of Mississippi or anywhere else contacted Beau Rivage about paying sales tax?

A.    Not yet. But we're subject to audits all the time, so it could come up at any time.

(Abel Dep., Apr. 20, 2010, at 318). The Court is asked to assume that the Mississippi State Tax Commission will assess this tax against Beau Rivage, as opposed to Grillot, and asked to assume what the amount of that liability may be. It is admitted that there has been no liability assessed as

8

of yet and no claim made by the Tax Commission against Beau Rivage. Therefore, it appears that this claim is not yet ripe for judicial determination. Because the claim is not ripe, the Court cannot consider whether there is a breach or whether the tax is owed. This claim is dismissed without prejudice.

E.    CHOICE OF LAW

Beau Rivage claims that the general contract required that the subcontracts contain a Mississippi choice of law provision, but Seaward's contract had no choice of law provision and Resolve's had a Louisiana one. Grillot argues that the general contract did not require the subcontracts to mirror this provision and there are no damages. Grillot seeks summary judgment for lack of damages.

There is no evidence of any damage caused by these alleged breaches. Beau Rivage claims no damage from these alleged breaches, but rather argues that the choice of law provisions are inconsistent with the general contract. Beau Rivage does not even argue that some law other than Mississippi law would now apply to Seaward's claims or that Louisiana law differs on any future claims brought by Resolve. Further, as stated previously, any liability Beau Rivage will have to Seaward will stem from Beau Rivage's alleged misrepresentations to Seaward and will not be caused by Seaward's alleged lack of a choice of law provision.

Because there is no evidence of damages, the Court need not consider whether there was a breach of contract. Grillot is entitled to summary judgment on this claim.

### F.    WAIVER AND RELEASES

Beau Rivage argues that Grillot's representation on Pay Application 5 was false because Seaward charged Grillot $900,000 for debris removal, whereas Grillot only charged Beau Rivage $158,400 for debris removal.  This claim therefore is a repeat of Beau Rivage's complaint that Grillot was charging Beau Rivage a lesser day rate than Seaward was charging Grillot.  As previously set out, this claim is dismissed.  There is no damage to Beau Rivage.  Further, it is undisputed that Beau Rivage refused to pay Grillot even the $158,400 that Grillot did bill.

### G.    OYSTER AND DREDGE SPOILS

Beau Rivage argues that after it suspended the contract, Beau Rivage requested Grillot to remove any remaining dredge spoils but Grillot did not.  Grillot also seeks summary judgment, maintaining that there are not yet any damages and Abel is incompetent to testify as to damages.

Beau Rivage has failed to point this Court to a contractual duty that would require Grillot to remove these spoils.  It points only to a letter wherein  Beau Rivage suspends the contract and instructs Grillot to remove dredge spoils.  Therefore, Beau Rivage has failed to establish beyond all peradventure that it is entitled to summary judgment on this claim.  The Court makes no judgment on whether or not there was such a duty, but only opines that Beau Rivage has not borne its summary judgment burden.

Grillot likewise fails to establish that it is entitled to summary judgment.  Grillot argues that Beau Rivage has not yet had to spend money on spoils removal and Abel is incompetent to testify as to damages.  Grillot's project manager Edwin Reardon testified that there were remaining spoils which still require removal.  Therefore there is a genuine issue of material fact, regardless of Abel's testimony.

### H. WRITTEN MODIFICATIONS

#### 1. DEBRIS REMOVAL

Beau Rivage argues that (1) any debris removal on the tops of barges was outside the scope of the contract, (2) Grillot had a duty to bring this to Beau Rivage's attention before removing any construction debris from the barge tops, (3) Grillot did not so notify Beau Rivage, and (4) therefore Beau Rivage is potentially liable to either Seaward or Grillot for this additional work. Grillot responds that no change order was required, and in the alternative, it was waived.

First, the Court has already ruled that if Beau Rivage is liable to Seaward for this debris removal, it will be because of Beau Rivage's alleged misrepresentations to Seaward. So, any liability Beau Rivage may have to Seaward will not be caused by this alleged breach of contract, but by Beau Rivage's representations.

Second, this Court has already found that Beau Rivage was aware of the construction debris on the barge tops. (Mem. Opin. & Order Granting in Part & Denying in Part Summ. J. at 2). Therefore, Beau Rivage has failed to demonstrate that it is entitled to summary judgment on this claim.

#### 2. PAINTING

The general contract called for painting only 1,400 square feet of the barges. Subsequently, Grillot notified Beau Rivage that more areas needed painting. A change order was eventually approved. Beau Rivage argues that Grillot breached the contract, because before the change order was approved, Grillot went ahead and began the additional painting "based on alleged verbal instructions by Abel, which Abel disputes." (Beau Rivage's 2d Mem. Summ. J. at 14). Grillot responds that Beau Rivage waived the change order requirement.

Beau Rivage admits there is a question of material fact as to whether Beau Rivage instructed Grillot to move forward with the additional painting before the change order. Thus there is evidence from which a jury could find that there was no breach. Further, Beau Rivage does not argue or point to evidence it was damaged by this alleged breach. Therefore, Beau Rivage has failed to demonstrate that it is entitled to judgment as a matter of law on this claim.

I. ATTORNEY FEES

Beau Rivage argues that because it is entitled to summary judgment on its breach of contract claims, it is entitled to attorney fees under the contract. Since the Court has found that Beau Rivage is not entitled to judgment as a matter of law on breach of contract, Beau Rivage is not entitled to judgment as a matter of law for contractual attorney fees.

J. BILLING EARLY FOR PAINTING WORK

Grillot argues that Beau Rivage's claim for billing early for certain painting work fails for lack of damages, because all of the painting work was eventually performed. Beau Rivage responds that it lost nine months of interest by paying for this work early.

It is undisputed that Beau Rivage received all the painting work for which Beau Rivage paid. Abel testified:

Q.  Does Beau Rivage have any damages from the painting in terms of it got what it paid for in the contract?

A.  Other than we spent $400,000, or roughly $500,000 a little bit early bearing interest on it, I guess, by Ed rebilling it.

(Abel Dep., Mar. 18, 2010, at 88). Abel testified that $518,300 was billed on Pay Application 8 before the painting was actually completed in August of 2008. Pay Application 8 was paid on March 19, 2008. Grillot does not challenge Beau Rivage's assertion that interest is owed. There

is thus a dispute of fact as to whether Beau Rivage sustained damages on this claim.

II.    FRAUD

Beau Rivage claims that Grillot committed fraud by (1) billing for work not done by Marks Enterprises, (2) billing for dredging work not done, and (3) overestimating the amount of oysters, marine growth, silt, and mud on the barge tops.  Beau Rivage argues that Seaward also committed fraud.

Because Beau Rivage has no counterclaim against Seaward, and because the Court did not reopen dispositive motions as to Seaward, Beau Rivage is not entitled to judgment as a matter of law on whether Seaward committed fraud.  The Court will now consider whether Grillot committed fraud.

To prove its fraud claims, Beau Rivage must prove by clear and convincing evidence that Grillot made a (1) false, (2) material representation, (3) that Grillot either knew was false or was ignorant as to its truth, (4) on which Grillot intended to induce Beau Rivage's reliance.  *Beck Enters., Inc. v. Hester*, 512 So. 2d 672, 675 (Miss. 1987).  Beau Rivage must further show that it (5) reasonably relied on the statement (6) to Beau Rivage's detriment.  *Id.*

A.    MARKS

Beau Rivage first argues that Grillot submitted two pay applications claiming that Marks performed work, when Marks did not.  Grillot responds there was no misrepresentation and it did not cause any detriment, because Marks was preparing to mobilize, but Beau Rivage halted the project.

Marks was the minority subcontractor Grillot hired to manage the Harrison County Disposal site where the spoils from the project were to be disposed.  The representations at issue

13

are in Pay Applications 5 and 6. On Pay Application 5, Grillot represented that "the Work covered by this Application for payment has been completed in accordance with the Contract documents." (Beau Rivage's 2d Mot. Summ. J. Ex. 31 at BR-02352). Among other things, Grillot represented that ten percent of the dredging was completed during the November 24, 2007, pay period. Attached to the pay application was the MBE (Minority Business Enterprise) Monthly Progress Report, dated November 26, which indicated that Marks performed, what appears to be "construction mag. [management]." *Id.* at BR-02360. The "billing relating to current pay application" was "$25,425," which represented ten per cent of the "base commitment" of $254,250. *Id.* Beau Rivage approved this application for payment, less the amount Beau Rivage rejected for debris removal.

Matthews Marine, Incorporated, was the subcontractor who was responsible for transporting the spoils to a disposal site. Matthews Marine's 30(b)(6) designee Thomas Matthews testified that on November 8, 2007, he brought the oyster shell spoils to Fort Bayou in Jackson County, where they were discarded. The next day, he did the same thing. Beau Rivage was present, making a public relations video of these disposal efforts to promote the fact that they were re-harvesting the oysters. This is evidence from which a reasonable jury could conclude that Beau Rivage did not rely on Pay Application 5's MBE report. Even though the report indicated that all of the spoils during that period were going to Marks's disposal site, there is evidence that Beau Rivage was present when at least one load was taken to another site.

As for Pay Application 6, it indicated that another four and a half percent of dredging, for the price of $68,400, was completed during the December 19, 2007, pay period. Attached to the pay application was an MBE report indicating that Marks performed "construction mgt." in the

14

amount of $11,400, "relating to the current pay application."  (Beau Rivage's 2d Mot. Summ. J. Ex. 33 at 3).  The $11,400 represents 4.48 per cent of Marks's total contract price.  Beau Rivage does not point to evidence that it would not have paid this pay application or that it would have paid less but for this alleged misrepresentation.  Other pay applications were approved and paid where no MBE report was attached.  Additionally, there is evidence, viewed in the light most favorable to Grillot, that it did not know of the falsity of the statement at the time.  It is undisputed that Grillot in fact hired Marks to manage the Harrison County disposal site for the spoils.  Also, Mr. Matthews testified that, with the exception of the oyster spoils that went to Jackson County, he took the spoils to J&S in Gulfport, rather than the Marks site.  Further:

> Q.     Was it your understanding that it was your responsibility to find someplace to off-load this instead of Ed Reardon's?
>
> A.     I guess the impetus behind that was more that it was, you know–it was on my barge, and, you know, just trying to accommodate the process to get the production, you know, to complete the job and not delay it.  It was probably as much the impetus for me, you know, arranging that than anything.

(Matthews's Dep. at 72).  In other words, he claimed that it was his decision to take the spoils to someplace other than Marks's disposal site.  Beau Rivage does not address whether Mr. Matthews communicated this to Grillot or it otherwise found out prior to submitting Pay Application 5 or 6.  Beau Rivage is not entitled to summary judgment.

### B.     DREDGING

Beau Rivage argues that Grillot committed fraud when it billed for dredging work on Pay Applications 5 and 6, when no dredging occurred at this time, and misrepresented the total dredging performed on Payment Application 14.  Grillot responds there is no evidence of fraud,

reliance, nor of damages. Grillot also seeks summary judgment on this claim on the basis that Abel is incompetent to testify.

As for Pay Application 5, neither side is entitled to summary judgment. Beau Rivage argues Grillot billed for $169,500 for dredging when none was done. Beau Rivage admits, however, that there is evidence that Matthews performed some dredging during this time. Grillot argues that Abel is incompetent to opine on whether and how much dredging was done. Reardon testified that no dredging was done during this time period, so there is a dispute of fact regardless of Abel's testimony.

As for Pay Application 6, Beau Rivage argues that while Grillot billed for $76,000 for dredging in December 19, 2007, this did not occur until mid-2008. Beau Rivage provides only argument and points the Court to no evidence in support of this claim. Grillot is entitled to dismissal of this claim.

As for Payment Application 14, Beau Rivage argues that Grillot billed for 38 percent of the dredging work "even though not even one of the five barges had been completely done." (Beau Rivage's 2d Mem. Summ. J. at 20). Beau Rivage argues that Grillot billed for dredging "underneath almost two full barges, namely D and E, when . . . Barge E had not been fully dredged." *Id.* There is nothing on Payment Application 14 that indicates that barges D and E were the barges that were "almost" fully dredged. Beau Rivage points to no other evidence of such a representation. Even if there were, this is not clearly inconsistent with the fact that Barge E was not completely dredged. Because Beau Rivage has not demonstrated a misrepresentation, Grillot is entitled to summary judgment on this claim.

Beau Rivage argues that Grillot committed fraud when it estimated the oysters, marine growth, silt, and mud on top of the barges.  Beau Rivage argues that this fraud was used by Grillot in an effort to obtain the day rate, as opposed to the fixed price, under the contract. Grillot responds that there is a dispute of fact on the amount on top of the barges, there are no damages, and Beau Rivage relies on inadmissible evidence.  Grillot also seeks summary judgment on the basis that Abel is incompetent to testify on this issue.

Abel requested Grillot to estimate the amount of oysters, etc., on the barge tops.  The reason was not related to the price that Beau Rivage was going to pay for the oyster removal. Rather, Abel testified the purpose of the request was:

> A.    We wanted to find out how much material was on top of the barges and the weight of it because the barges had been damaged in the storm and was compromised.  I don't know if we were doing some calculations at the time or exactly what.

> Q.    And this was for a fixed price portion of the contract, correct?

> A.    Yes.

> Q.    Which had already been negotiated at the time of this e-mail?

> A.    Yes.
> . . .

> Q.    Okay.  And if it wasn't priced [sic], can you be a little bit more specific about what was your purpose in requesting this information?

> A.    Again, it was either for some calculations or documentation.  Because the barges took some damage during the storm, so the volume is a little bit less than what it had originally been.  So we wanted to see how much weight was on the top of the barges.

> Q.    Did it have to do with concerns about the structural integrity of the barges?

17

A.    Not the structural–well, the–how much uplift there was.

. . .

Q.    The extra weight would reduce the flotation from the barges?

A.    Right.  And we were also at that time, I believe, calculating the ballast
      water from what we had originally and trying to balance out load cells and
      all kinds of restraint data.

(Abel Dep., Mar. 18, 2010, at 103-05).  Abel admits that Beau Rivage did not rely on these estimates in order to price the oyster removal and it did not in fact pay Grillot a day rate for the oyster removal.  Rather, the representation was used to determine the correct ballast to apply to the barges.  There is no evidence or argument that these representations caused any other type of detriment.  Grillot is entitled to summary judgment on this claim.

III.    NEGLIGENT MISREPRESENTATION

In the alternative, Beau Rivage claims that these misrepresentations amount to negligent misrepresentation.  To prove negligent misrepresentation, Beau Rivage must prove the following elements:

(1)    a misrepresentation or omission of fact;

(2)    that the representation or omission is material or significant;

(3)    that the person/entity charged with the negligence failed to exercise that
       degree of diligence and expertise the public is entitled to expect of such
       persons/entities;

(4)    that Beau Rivage reasonably relied upon the misrepresentation or
       omission; and

(5)    that Beau Rivage suffered damages as a direct and proximate result of
       such reasonable reliance.

*Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (¶20) (Miss. 2007).

### A.     MARKS

As set forth above, there is a genuine issue of material fact as to whether Beau Rivage relied on or was damaged by the alleged misrepresentations concerning Marks.  Summary judgment is denied.

### B.     DREDGING

Because there is a dispute of fact as to whether there was a misrepresentation on Pay Application 5, summary judgment is denied on this claim.

Because there is no evidence of a misrepresentation, reliance or damages as to Pay Application 6, Grillot is granted summary judgment on this claim.

Because there is no evidence of a misrepresentation as to Pay Application 14, Grillot is likewise, granted summary judgment on this negligent misrepresentation claim.

### C.     OVERESTIMATING

Because there is no evidence of reliance or damages with respect to the overestimating of oysters, marine growth, silt, and mud on the barge tops, Grillot is entitled to summary judgment on this negligent misrepresentation claim as well.

### IV.     PUNITIVE DAMAGES

Because Beau Rivage is not entitled to summary judgment on its fraud claims, Beau Rivage is not entitled to judgment as a matter of law on punitive damages.

### V.     INDEMNITY

Beau Rivage brings a claim for contractual indemnity, arguing that Grillot must indemnify Beau Rivage for any liability or attorney fees caused by Seaward's claims against Beau Rivage.  Grillot seeks summary judgment on Beau Rivage's indemnity claim, arguing that

the Court has dismissed all but Seaward's misrepresentation claims against Beau Rivage. Beau Rivage responds that it did not commit a tort.

Grillot does not provide the Court with any authority, including the pertinent contractual language, to support Grillot's position against indemnity. Therefore, Grillot has not demonstrated that it is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Beau Rivage's Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment on Beau Rivage's Counterclaims Against Grillot Construction LLC [149] should be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Grillot's Motion for Partial Summary Judgment [155] should be and is hereby **GRANTED** on the breach of contract claims for failure to mirror the general contract's definition of debris, day rates, choice of law, and for including per diems, and misrepresentation claims for billing for dredging work on Pay Applications 6 and 14 and overestimating the material on the barge tops. The claim for breach of contract for failure to pay sales tax is dismissed without prejudice. The remainder is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 29th day of July, 2010.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE